Electronically Filed - St Louis County - August 09, 2018 - 05:12 PM

IN THE CIRCUIT COURT
OF ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| CITY OF CREVE COEUR, MISSOURI, on behalf of itself and all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) No. 18SL-CC02821 ) |
| | ) Div. 17 |
| v. | ) ) |
| DIRECTV, LLC, DISH NETWORK CORP., and DISH NETWORK L.L.C., | ) ) ) |
| Defendants. | ) ) |

## FIRST AMENDED PETITION FOR DECLARATORY JUDGMENT AND OTHER RELIEF

COMES NOW Plaintiff, City of Creve Coeur, Missouri, on behalf of itself and all others similarly situated, and for its First Amended Petition for Declaratory Judgment and Other Relief, states as follows:

### INTRODUCTION

1. Since 2007, several providers of video service, such as cable companies, have remitted fees to Missouri municipalities under the 2007 Video Services Providers Act, sec. 67.2675, RSMo, *et seq.*, and local ordinances (hereafter "video-service-provider fee(s)"). Defendants DIRECTV, LLC, DISH Network Corp., and Dish Network L.L.C. (collectively "Defendants") provide video programming to customers in Missouri municipalities. But Defendants have not been paying video-service-provider fees, which deprives Missouri municipalities of much-needed revenue.

2. The 2007 Video Services Providers Act applies to Defendants just as it applies to other video-service providers. The 2007 Act defines "video service" as "the provision of video programming provided through wireline facilities located at least in part in the public right-of-

1

way without regard to delivery technology, including internet protocol technology whether provided as part of a tier, on demand, or a per-channel basis." Sec. 67.2677(14), RSMo.  Many of Defendants' services require a subscriber to be connected to the internet, and they often use the internet to stream video programming to customers' internet-connected devices.  By relying on an internet connection for their services, Defendants use internet wireline facilities located at least in part in the public right-of-way.  Therefore, Defendants are video-service providers within the meaning of the Act, and they should be paying video-service-provider fees on their gross revenues.

3. Plaintiff Creve Coeur, on behalf of itself and other Missouri municipalities, seeks to require Defendants to abide by the Act and to pay their fair share of fees owed to these municipalities – as should all providers of video service.

**PARTIES, JURISDICTION, AND VENUE**

4. The City of Creve Coeur, Missouri ("Creve Coeur" or "Plaintiff") is a lawfully existing Missouri municipal corporation and home rule charter city within the meaning of Mo. Const. art. VI, sec. 19, sec. 82.010, RSMo, *et seq.*, and all other applicable laws, and it has been at all times during the preceding five years.  Creve Coeur is located in St. Louis County, Missouri.

5. Pursuant to Missouri's 2007 Video Services Providers Act, Plaintiff is authorized to, and does, collect fees from certain video-service providers operating in Creve Coeur.  Sec. 67.2689, RSMo.  Specifically, Creve Coeur's code of ordinances states: each "video service provider shall pay to the City a video service provider fee in the amount of five percent (5%) of the provider's gross revenues on or before the last day of the month following the end of each calendar quarter."  Creve Coeur Municipal Code, Chap. 635, Art. VI, Sec. 635.330(C)(1).

Electronically Filed - St Louis County - August 09, 2018 - 05:12 PM

6. Defendant DIRECTV, LLC ("DIRECTV") is a California limited liability company with a registered agent in this County. It is a subsidiary of AT&T, Inc. DIRECTV does business in Missouri and has done so at all times during the preceding five years.

7. Defendant DISH Network L.L.C. is a Colorado limited liability company. Defendant DISH Network Corp., a Nevada corporation, is the parent company of DISH Network L.L.C. DISH Network L.L.C. and DISH Network Corp. will collectively be referred to as "DISH" throughout this petition. While DISH does business in Missouri and has done so at all times during the preceding five years, neither of these DISH entities has registered to do business in Missouri.

8. This Court possesses subject-matter jurisdiction under Mo. Const. art. V, sec. 14 (circuit courts "have original jurisdiction over all cases and matters, civil and criminal"), and to enforce Defendants' obligation to pay video-service-provider fees under Missouri's 2007 Video Services Providers Act.

9. This Court possesses personal jurisdiction under sec. 506.500.1 of Missouri's long-arm statute, because the cause of action arises from Defendants' transaction of business within this State.

10. Venue is proper under sec. 508.010.2, RSMo, because Plaintiff resides in St. Louis County, the complained of actions occurred in this County, and Defendants can be found, do business, or have a registered agent in this County.

**CLASS ACTION ALLEGATIONS**

11. This action is brought by Plaintiff pursuant to Missouri Supreme Court Rule 52.08 on behalf of itself and all other Missouri political subdivisions similarly situated, to wit: all

3

Electronically Filed - St Louis County - August 09, 2018 - 05:12 PM

Missouri political subdivisions that collect video-service-provider fees, and in which Defendants have provided or continue to provide video service.

12. The proposed class includes at least 40 Missouri municipalities, many of which are small with very limited resources. The class members, and in particular smaller jurisdictions, have limited staffs and budgets, with little or no funds available for litigation of this nature. The class is so numerous that joinder of all members is impracticable.

13. There are questions of law or fact common to the class, including whether Defendant provides video service within class members' geographic areas, whether Defendants generate gross revenues from such operations, and whether such gross revenues are subject to video-service-provider fees.

14. The claims asserted by Plaintiff are typical of the claims of the class in that their statutory authority and fees are largely identical, and the interpretation and application of the applicable statutes and ordinances will be similar for all class members.

15. Plaintiff will fairly and adequately protect the interests of class members in that their interests are aligned, and Creve Coeur has been found fit to represent a municipal class in similar circumstances. Plaintiff has also retained counsel competent and experienced in class-action litigation, including municipal class actions.

16. The prosecution of separate actions by individual class members would create a risk of: a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for Defendants; and b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

17. Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole. Defendants have conducted business as if the video-service-provider fees do not apply to their business(es) or their gross revenues, so they have failed or refused to pay video-service-provider fees.

18. Further, questions of law or fact common to class members (e.g., whether Defendants provide video service within class members' geographic areas, whether Defendants generate gross revenues from such operations, and whether the gross revenues from such operations are subject to video-service-provider fees) predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**FACTUAL ALLEGATIONS**

19. Defendants provide paid video programming service to customers who use the service to view television shows, movies, documentaries, and other programming.

20. DIRECTV has over 20 million U.S. subscribers, including customers in Creve Coeur and other class members.

21. DISH has over 13 million subscribers, including customers in Creve Coeur and other class members.

22. DIRECTV and DISH compete directly with other video-service providers, offering video programming comparable to that provided by cable companies and television-broadcast stations.

23. DIRECTV and DISH offer packages of video service. The services include a mixture of live programming, premium channels like HBO, SHOWTIME, STARZ and Cinemax,

and "on demand" video service. Subscribers to Defendants' services have a unique account that facilitates their paid access to the services, which are not offered for free to the general public.

24. Over the past decade, DIRECTV and DISH have transformed their businesses and method of delivery. They no longer deliver video programming just via satellite, as they also rely on the internet to deliver their video services.

25. For example, DIRECTV offers a proprietary DVR called the "DIRECTV Genie." It allows subscribers to record five shows at once, and it recommends shows based on past viewing preferences. To receive all its video services, it must be connected to the internet. *See* Exhibit A; *see also* Exhibit B ("For optimal performance of your Leased Equipment, including ordering with your remote control or receiving certain Services, your Leased Equipment must be directly connected to the same land-based telephone line or internet connection.").

26. "Genie lets you watch select shows that have aired in the last 72 hours and restart live TV, so even if you're running late you'll never miss a scene." This feature, however, requires an "[i]nternet-connected HD DVR." Exhibit C.

27. DIRECTV also offers the ability to watch thousands of television shows and movies "on demand," meaning the subscriber chooses when to watch the show or movie. This often requires not only a DVR such as the DIRECTV GENIE, but also "broadband Internet service with speeds of 750 kbps or higher and a network router with an available Ethernet port." *See* Exhibit D.

28. Similarly, DIRECTV allows subscribers to view movies through "Pay Per View" programming. "To order Pay Per View programming with your remote control, all the DIRECTV receivers must be continually connected to the same landline and/or the Internet." *See id.*

6

Electronically Filed - St Louis County - August 09, 2018 - 05:12 PM

29. Customers can even watch DIRECTV's programming on internet-connected devices such as mobile phones and iPads through DIRECTV's DIRECTV App and Sunday Ticket App. These applications use the internet to stream DIRECTV's programming to mobile devices.

30. Further, DIRECTV offers a stand-alone service called DIRECTV NOW that relies exclusively on streaming video programming over the internet. DIRECTV NOW has over one million subscribers. The service requires no satellite dish, no hardware, and no installation. Instead, it uses internet-connected devices—electronic devices like streaming media players (e.g., Roku, Chromecast, or Apple TV), smartphones, and tablets—that have software allowing DIRECTV NOW to deliver content over the internet.

31. DIRECTV offers DIRECTV NOW in Plaintiff's and class members' geographic areas. Depending on the package selected, DIRECTV NOW allows subscribers to watch up to 120+ live TV channels and more than 25,000 On Demand shows and movies.

32. DISH has evolved in a similar fashion. It offers an advanced DVR called the Hopper. "An Internet-connected Hopper is an even more powerful Hopper." Connecting the Hopper to the internet allows customers to "[e]njoy On Demand programming whenever it's convenient"; "[o]rder special pay-per-view events through your TV without making a phone call"; interact with internet apps; and pay bills through the TV. *See* Exhibit E.

33. Similarly, "[c]onnect[ing] your equipment to the internet" allows "instant access to thousands of TV episodes and movies On Demand, mobile viewing using DISH Anywhere, and popular apps like Netflix." As DISH emphasizes in its marketing, "In the era of peak TV, it's almost impossible to watch everything live," but "with an internet-connected receiver, you can

watch missed episodes, catch up on an entire season, or check out the newest shows and movies." *See* Exhibit F.

34. DISH's "DISH Anywhere" service allows a customer to view programming anywhere, but it too requires the internet and internet-connected devices. DISH Anywhere is "an online video site that allows [customers] to instantly watch thousands of TV shows, movies, and clips." Exhibit G. It allows a customer to transform a "computer, smartphone, or tablet into your TV and enjoy … all your live channels, everything on your DVR, and thousands of On Demand titles." *See* Exhibit F.

35. To watch live programming or DVR recordings through DISH Anywhere, not only must the customer's smartphone or tablet be connected to the internet, but the customer's "DVR must also be connected to the Internet." *See* Exhibit G.

36. DISH also has a stand-alone service called Sling TV that relies exclusively on streaming video programming over the internet. Sling TV has over two million subscribers. The service requires no satellite dish, no hardware, and no installation. Instead, it uses internet-connected devices—electronic devices like streaming media players (e.g., Roku, Chromecast, or Apple TV), smartphones, and tablets—that have software allowing Sling TV to deliver content over the internet.

37. DISH offers Sling TV in Plaintiff's and class members' geographic areas. Sling TV allows subscribers to watch both live TV channels and on-demand shows and movies.

38. Although DIRECTV and DISH use the internet to deliver these services, these video services do not provide the actual access to the internet. Instead, the customer receives an internet connection through an internet-service provider. The internet-service provider supplies

8

Electronically Filed - St Louis County - August 09, 2018 - 05:12 PM

an internet account and a physical means to connect to the internet (such as a modem), which allows customers to access the internet.

39. Customers typically use a broadband internet connection when using DIRECTV's or DISH's services. In Creve Coeur, common providers of broadband internet service include Charter Communications and AT&T. These broadband internet connections rely upon wireline facilities located in the public right-of-way to bring internet service to customers.

40. In turn, this means that DIRECTV and DISH provide their video programming through wireline facilities located at least in part in the public right-of-way because they use these broadband internet connections when they rely upon internet-connected devices to deliver services and programming. These wireline facilities are used by DIRECTV's and DISH's customers to interact with, communicate with, and navigate DIRECTV's and DISH's systems, and to arrange for and receive video programming such as "on demand" or live programming with or without additional programming available by satellite signal.

41. DIRECTV and DISH are thus video-service providers within the meaning of Missouri's 2007 Video Services Providers Act, which defines "video service" as "the provision of video programming provided through wireline facilities located at least in part in the public right-of-way without regard to delivery technology, including internet protocol technology whether provided as part of a tier, on demand, or a per-channel basis." Sec. 67.2677(14), RSMo. Further, DIRECTV and DISH are not a commercial mobile service provider as defined by 47 U.S.C. § 332(d), and they are not providing video programming solely as part of a service that enables users to access content, information, electronic mail or other service offered over the public Internet.

9

42. Upon information and belief, DIRECTV and DISH provide paid video service within Creve Coeur's and other class members' geographic areas. DIRECTV and DISH have failed to comply with Missouri's 2007 Video Services Providers Act by failing to give notice of intent to provide service to Creve Coeur and other class members, and failing to pay the required video-service-provider fees to Creve Coeur and other class members.

### COUNT I – DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND AN ACCOUNTING

43. Plaintiff repeats, re-alleges and incorporates by reference paragraphs 1-42 of this Petition as if more fully set forth herein.

44. DIRECTV and DISH are engaged in the business of providing video service within Plaintiff's and other class members' geographic areas within the meaning of Missouri's 2007 Video Services Providers Act, sec. 67.2675, RSMo, *et seq.* DIRECTV and DISH derive gross revenues from their business, and they have engaged in such business and derived gross revenues (as defined by sec. 67.2677, RSMo) from that business at all times during the preceding five years.

45. Defendants have failed and refused to pay video-service-provider fees to Plaintiff as required by the 2007 Act and by Creve Coeur Municipal Code, Chap. 635, Art. VI, Sec. 635.330(C)(1). Further, Defendants have failed and refused to pay video-service-provider fees to class members as required by the Act and by similar code and ordinance provisions.

46. Defendants' competitors in the video-service market, such as Charter Communications, have paid and continue to pay video-service-provider fees to class members under the statutes, codes and ordinances that Defendants refuse to honor, despite such laws requiring fair and nondiscriminatory competition and regulation.

47. A justiciable controversy exists between Plaintiff, Defendants and class members.

10

Electronically Filed - St Louis County - August 09, 2018 - 05:12 PM

48. Plaintiff and class members do not have an adequate remedy at law. Defendants' violations of the Act and local codes and ordinances are continuing and, as such, Plaintiff and class members would be required to bring successive actions to enforce compliance and to collect unpaid fees.

49. Unless Defendants are enjoined from violating the Act and local codes and ordinances, Plaintiff and class members will suffer irreparable harm or injury. They are being deprived of revenues needed for public health, safety and welfare. In all probability, since Defendants intend to continue engaging in business in class members and deriving gross revenues from their business, Plaintiff and class members will continue to be deprived of video-service-provider fees unless Defendants are so enjoined.

50. Defendants have a legal and fiduciary duty to keep and maintain accurate accounts and records "pertaining to gross revenues received from the provision of video services provided to consumers located within the geographic area" of Plaintiff and class members. *See* sec. 67.2691.2, RSMo.

51. Plaintiff has incurred and will continue to incur costs and attorneys' fees needed for the investigation and prosecution of these claims. Those attorneys' fees and other expenditures will result in a benefit to all members of the class, and Plaintiff's counsel should recover these fees and expenditures pursuant to applicable law.

WHEREFORE, Plaintiff, on behalf of itself and all Missouri political subdivisions similarly situated, prays that this Court:

A. Declare and adjudge that Defendants provide video service within the meaning of Missouri's 2007 Video Services Providers Act, sec. 67.2675, RSMo, *et seq.*;

B.  Declare and adjudge that Defendants have failed to comply with and owe video-service-provider fees under Missouri's 2007 Video Services Providers Act, Creve Coeur Municipal Code, Chap. 635, Art. VI, Sec. 635.330(C)(1), and similar class member code and ordinance provisions for the preceding five years and for the duration of this litigation;

C.  Order an accounting of all monies that Defendants owe Plaintiff and class members, including interest and penalties;

D.  Enjoin and restrain Defendants from engaging in business within the boundaries of Plaintiff and class members and deriving gross revenues therefrom without paying the required video-service-provider fees;

E.  Award attorneys' fees, costs and expenses from the amount(s) recovered for the common benefit of the class; and

F.  Order such other and further relief as the Court deems just and proper under the circumstances.

## COUNT II – UNJUST ENRICHMENT

52. Plaintiff repeats, re-alleges and incorporates by reference paragraphs 1-51 of this Petition as if more fully set forth herein.

53. Defendants have operated as video-service providers in the geographic areas of Plaintiff and other class members.

54. By not remitting video-service-provider fees, DIRECTV and DISH have received the benefit of doing business in Plaintiff and other class members without paying required fees, been aware that they were doing business without paying required fees, and accepted and retained this benefit under circumstances that are inequitable or unjust, i.e., by depriving Plaintiff

and other class members of monies due under the statutes, codes, and ordinances that Defendants refuse to honor.

WHEREFORE, Plaintiff, on behalf of itself and all Missouri political subdivisions similarly situated, prays that this Court:

A. Declare and adjudge that Defendants' failure to pay video-service-provider fees as required by the 2007 Act, Creve Coeur Municipal Code, Chap. 635, Art. VI, Sec. 635.330(C)(1), and similar class member code and ordinance provisions caused Defendants to be unjustly enriched, as they avoided fees that should have been paid to Plaintiff and class members during the preceding five years and for the duration of this litigation;

B. Order an accounting of all monies that Defendants owe Plaintiff and class members, including interest and penalties;

C. Enjoin and restrain Defendants from engaging in business within the boundaries of class members and deriving gross revenues therefrom without paying the required video-service-provider fees;

D. Award attorneys' fees, costs and expenses from the amount(s) recovered for the common benefit of the class; and

E. Order such other and further relief as the Court deems just and proper under the circumstances.

**COUNT III – UNPAID FEES, INTEREST AND PENALTIES**

55. Plaintiff repeats, re-alleges and incorporates by reference paragraphs 1-54 of this Petition as if more fully set forth herein.

56. Defendants owe Plaintiff and other class members video-service-provider fees, together with interest and penalties, as a result of their failure to comply with the Act and

Plaintiff's and class members' codes and ordinances during the preceding five years and for the duration of this litigation.

WHEREFORE, Plaintiff, on behalf of itself and all Missouri political subdivisions similarly situated, prays that this Court:

    A.    Enter judgment in favor of each class member and against Defendants for the video-service-provider fees, interest and penalties due each class member from Defendants;

    B.    Award attorneys' fees, costs and expenses from the amount(s) recovered for the common benefit of the class; and

    C.    Order such other and further relief as the Court deems just and proper under the circumstances.

Electronically Filed - St Louis County - August 09, 2018 - 05:12 PM

DATED: August 9, 2018

By: /s/ John W. Hoffman
John W. Hoffman, #41484
Garrett R. Broshuis, #65805
Korein Tillery, LLC
505 N. 7th Street, Suite 3600
St. Louis, MO 63101
Tel. (314) 241-4844
Fax. (314) 241-1854

John F. Mulligan, Jr., #34431
101 South Hanley, Ste. 1280
Clayton, MO 63105
Tel. (314) 725-1135
Fax. (314) 727-9071

Howard Paperner, P.C. #23488
9322 Manchester Road
St. Louis, MO  63119
Tel. (314) 961-0097
Fax. (314) 961-0667

Carl J. Lumley, #32869
Curtis, Heinz, Garrett & O'Keefe, P.C.
130 S. Bemiston, Ste. 200
Clayton, MO 63105
Tel. (314) 725-8788
Fax. (314) 725-8789

Elkin L. Kistner, #35287
Bick & Kistner PC
101 South Hanley, Ste. 1280
Clayton, MO 63105
Tel. (314) 727-0777
Fax. (314) 727-9071

*ATTORNEYS FOR PLAINTIFF*

15

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed via the Court's electronic filing system on this 9th day of August, 2018.

In addition, I hereby certify that a copy of the foregoing was sent via U.S. Postal Service, first class mail, postage prepaid, this 9th day of August, 2018, to the following:

DirecTV, LLC
c/o CT Corporation System
120 South Central Ave.
Clayton, MO 63105

DirecTV, LLC
2260 E. Imperial Highway
El Segundo, CA 90245

DISH Network Corp.
9601 South Meridian Blvd.
Englewood, CO 80112

DISH Network Corp.
c/o Timothy Allen Messner
9601 S. Meridian Blvd.
Englewood, CO 80112

DISH Network, LLC
c/o Timothy Allen Messner
9601 S. Meridian Blvd.
Englewood, CO 80112

DISH Network, LLC
9601 South Meridian Blvd.
Englewood, CO 80112

                                          /s/ John W. Hoffman
                                                 John W. Hoffman

Electronically Filed - St Louis County - August 09, 2018 - 05:12 PM